United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J & J Sports Productions, Inc,                   No. C 10-5122 PJH  (JL)

       Plaintiffs,

      v.                                       **Report & Recommendation re**
                                                 **Plaintiff's Motion for Default Judgment**
Basto, et al.,                                   **(Docket # 13)**

       Defendants.
_____/

## I.      Introduction

### A.    Referral

     Plaintiff's motion for default judgment was referred to this Court for Report and recommendation under 28 U.S.C. §636(b). This Court finds the matter suitable for submission without oral argument under Civil local Rule 7-1(b).

### B.    Factual and Procedural Background

     Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the "Firepower": Manny Pacquiao v. Miguel Cotto Championship Fight Program telecast nationwide on Saturday, November 14, 2009. This Program included the main event (between Manny Pacquiao and Miguel Cotto)

along with undercard (preliminary) bouts, televised replay, and color commentary,

hereinafter collectively referred to as the "Program".

Plaintiff thereafter entered into sublicensing agreements with commercial entities

throughout the United States and its territories, wherein it granted limited public exhibition

rights to these entities (sublicensees) for the benefit and entertainment of the patrons within

their respective establishments (e.g., hotels, racetracks, casinos, taverns, bars,

restaurants, social clubs, etc.). The interstate transmission of the Plaintiff's Program was

encrypted and made available only to Plaintiff's customers (commercial locations that paid

Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the Program).

On Saturday, November 14, 2009, investigator Gary Gravelyn observed the unlawful

exhibition of the Program at the Defendants' commercial establishment. Gravelyn's

observations were later documented in a sworn affidavit now before this Court. (Declaration

of Affiant.)

On November 12, 2010, Plaintiff filed suit against Carmina Basto, individually and

d/b/a Manila Garden Restaurant; and J & C Basto Co., Inc., an unknown business entity

d/b/a Manila Garden Restaurant ("Defendants") after Plaintiff's efforts to resolve this matter

informally failed. The thrust of Plaintiff's Complaint alleged that Defendants, or their

employees or agents unlawfully intercepted and intentionally exhibited the Program at

Defendants. establishment for the purpose of direct or indirect commercial advantage,

thereby violating Section 605 of the Federal Communications Act of 1934, as well as Title

47 U.S.C. § 553. Plaintiff's complaint also includes a pendent common-law claim of

conversion.

Neither the Defendants nor anyone acting on the Defendants' behalf filed an Answer

or any other responsive pleading to Plaintiff's duly served complaint. Accordingly, on

February 3, 2011, following Plaintiff's Request, the Court entered default against the

Defendants in this action.

**II.    Analysis**

**United States District Court**
For the Northern District of California

**A.     Plaintiff is entitled to statutory damages and enhanced damages up to the maximum under U.S. Code.**

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect between the parties as a judgment rendered after a trial on the merits." Wright, Miller & Kane, Federal Practice and Procedures § 2684, p. 4-19-20. In that regard, the Defendants' default serves as an admission of Plaintiff's well-pled allegations of fact. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977). This standard has been applied to cases substantially similar to the one before this Court. See *e.g. Joe Hand Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorney's fees, and costs to which Plaintiff may be entitled to recover from Defendants as a result of Defendants' unauthorized exhibition of Plaintiff's Program.

Title 47 U.S.C. Section 605 protects companies like Plaintiff's against the theft of proprietary communications such as the instant Program. *California Satellite Systems v. Seimon*, 767 F.2d 1364 (9th Cir. 1985); *International Cablevision, Inc. v. Sykes*, 75 F.3d.123 (2d. Cir. 1996). The majority of courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Unfortunately, in this particular action, because the Defendants failed to respond to Plaintiff's duly served complaint, Plaintiff cannot determine the precise means that the Defendants used to receive the Program unlawfully. Nevertheless, Plaintiff should not be prejudiced because it cannot identify the precise means of signal transmission the Defendants used and respectfully submits its prayer for recovery of damages, attorney's fees and costs pursuant to Title 47 U.S.C. Section 605.

A party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Pursuant to that section, the aggrieved party

1    may recover "a sum of not less than $1,000.00 or more than $10,000.00, as the Court

2    considers just" for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, if the Court

3    determines that a violation was committed "willfully and for purposes of direct or indirect

4    commercial advantage or private financial gain," the court may increase the award of

5    damages by up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii) (these

6    damages have come to be referred to as "enhanced" damages). Furthermore, the Court

7    shall award full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).

8    Because Plaintiff constitutes an aggrieved party under 47 U.S.C. section 605, et seq.

9    (hereinafter "Statutes"), see 47 U.S.C. § 605(d)(6), Plaintiff is entitled to damages from the

10   Defendants.

11          Manila Garden Restaurant is a commercial establishment, and, as such, could only

12   have lawfully obtained the Program if Plaintiff had contracted with Defendants for the rights

13   to show it. However, this lawful approach was not taken. Therefore, Defendants must have

14   undertaken specific wrongful actions to intercept or receive and broadcast the encrypted

15   telecast. See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by

16   the Court (hereinafter "Plaintiff's Affidavit"). In light of the fact that Defendants necessarily

17   must have committed wrongful acts in order to intercept, receive, and broadcast the

18   Program, coupled with the ongoing piracy problems encountered in the satellite broadcast

19   industry (as discussed in detail below), Plaintiff seeks statutory damages.

20          Statutory damages are appropriate where actual damages are difficult to prove.

21   *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981).

22   The lack of adequate proof of any particular element causes the Court to rely, within its

23   discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344

24   U.S. 228, 233 (1952). In the instant case, as more fully discussed infra, it would be

25   impossible to calculate the full extent of the profits lost by Plaintiff and the additional

26   damages sustained by Plaintiff as a result of the Defendants' unlawful actions. Accordingly,

27   it is appropriate for Plaintiff to elect to receive statutory damages in the instant action.

28

**United States District Court**
For the Northern District of California

1    In order to deter the unlawful use of communications such as the Program,

2  Congress specifically designed the Statutes to provide "both Prosecutor[s] and civil

3  plaintiffs [with] the legal tools they need to bring piracy under control." Trademark &

4  Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7, 5577, 5658; see also *U.S. v.*

5  *Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To achieve these ends, the Statutes

6  include severe penalties, both civil and criminal, for those who intercept, receive or

7  broadcast protected communications. *Scott,* 783 F. Supp. At 281; see generally 47 U.S.C.

8  § 605(e). Moreover, Congress has equated a violation of the Statutes to a theft of services.

9  See 1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-43. In 1988, in an effort to

10  further deter theft, Congress amended the Statutes to provide for more severe penalties for

11  violations. *Id.* at 5657.

12    As set forth in Plaintiff's Affidavit, the Defendants' interception, receipt, and

13  broadcast of the encrypted Program was not inadvertent. Section 605(e)(3)(C)(iii) provides

14  for limited damages to the aggrieved party "[i]n any case where the court finds that the

15  violator was not aware and had no reason to believe that his acts constituted a violation of

16  this section . . . ."  As stated by Congress, this type of situation occurs rarely:

17    [i]t is not intended that this provision serve in any way as a defense to a
      determination of liability under subsection (a), but rather only as a provision to be
18    exercised in the court's discretion for those rare instances of ignorance of the law on
      the part of one adjudged to have violated it.

19

20  Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. .84 Bd. Vol. 8, 4745,

21  4751.  When Congress enacted the Statutes, it was specifically cognizant of the severe

22  impact of theft of various wire communications, including closed-circuit programming, such

23  as the Program.

24    According to Congress, these incidents threaten to undermine the satellite industry

25  and adversely impact legitimate satellite dealers and satellite programmers who otherwise

26  should be receiving payment for their programming or descrambling devices. *U.S. v. Scott*,

27  783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News

28  4655, 4746).

**United States District Court**
For the Northern District of California

1.     **Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II).**

Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). As indicated above, the amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be no less than $1,000.00 nor more than $10,000.00 for each violation. *Id.* Plaintiff requests that this Court award up to the maximum $10,000.00 permissible under the statute.

Before addressing cases that have awarded damages under this section, it is important to note the specific facts of this case.  According to the uncontroverted Affidavit of Gary Gravelyn, Defendants broadcast the Program on one 42" LCD television. Declaration of Affiant. The capacity of Defendants' establishment was 150, and two separate head counts while Gary Gravelyn was present (between 7:15 and 7:17 p.m.) revealed the total number of patrons (at various times) to be 87 and 79. Manila Garden Restaurant did not require a cover charge to enter the establishment. *Id.* Even in such cases of commercial signal piracy where there has been no egregious circumstances noted, the court has the discretion to award significant damages.

For example, in the case of *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL 1845090 (E.D.Cal. 2009) the court awarded damages under both sections 605 and 553. Although the court in *Tidmarsh* did not undertake an analysis of the viability of awarding damages under both sections, this Court may conclude the aggregate award as representative of an appropriate punishment (while bearing in mind of course, that this Court may not award more than $10,000.00 per statutory violation). In *Tidmarsh*:

> [T]he summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are important objectives of the statutes, the facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of approximately 50 people. . . . Plaintiff's investigator . . . noted it contained . . . a large television on one side of the establishment and a second, much smaller, television on the opposite side. [He] conducted three head counts while he was present: 23/27/29. He viewed the program on one television, a 55¡È screen located in the right corner of the establishment. Given the relatively small impact of Defendant's actions, the Court finds that the amount of requested damages should be reduced.

United States District Court

For the Northern District of California

1

2   *Id.* at *3.

3       Even though the court in *Tidmarsh* found a "small impact," it nonetheless awarded

4   the $10,000.00 maximum allowed under section 605(e)(3)(c)(i)(II). *Id.* The court also

5   awarded an additional $10,000.00 in enhanced damages (the court did not specify a

6   division of this award between sections 605 and 553). *Id.* The circumstances of the

7   violation in *Tidmarsh* is less egregious than those here (capacity of 50 vs. capacity of 150,

8   one 55" television vs. one 42" television and 23, 27, and 29 patrons vs. 87 and 79 patrons).

9   As applied to this case, at a minimum a comparable award would be $63,022.001,

10  calculated solely on analyzing patron counts vs. damages awarded under Section 605 and

11  as an enhancement. In *Tidmarsh* the average patron count was 26.34, in this case the

12  average patron count is 83. Section 605 and enhancement damages awarded in *Tidmarsh*

13  amounted to $20,000.00. Using the same ratio in this case, Section 605 and enhancement

14  damages would amount to $63,022.00. [ 26.34 / 83 = 315.11% x $20,000.00 = $63,022.00]

15      A similar analysis, leading to a similar result, was utilized in *J & J Sports*

16  *Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D.Cal. 2008), where the district court

17  found:

18          Here, the summons and complaint were properly served upon Defendant, her
            default was properly entered, and the complaint is sufficiently well-pled. By her
19          default, Defendant has admitted to willfully violating the referenced statutes for
            purposes of commercial advantage. Although deterrence of future violations are
20          important objectives of the statutes, the facts before the Court indicate that
            Defendant's establishment was not large, with a maximum capacity of 75 people. . . .
21          Plaintiff's investigator . . . conducted three head counts while he was there, which
            were 35/35/35. He viewed the program on one television, a 27" screen located on a
22          wall of the restaurant. Given the relatively small impact of Defendant's actions, the
            Court finds that the amount of requested damages should be reduced.
23

24  *Id.* at * 3.

25      As in *Tidmarsh*, the court in *Esquivel* awarded total damages of $30,000.00,

26  $10,000.00 under both sections 553 and 605 and an additional $10,000.00 in enhanced

27  damages (the Court did not specify a division among the statutes). *Id.*

28      Another case in which a "minor" violation led to a maximum statutory damages

    award was *J & J Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D.Cal. 2009).

United States District Court

For the Northern District of California

1    In Flores, there was no cover charge, no proof that the Defendants profited from their

2    actions, and the three head counts were 35/35/35. Once again, this is less egregious than

3    the situation with Plaintiff herein (no cover charge and two separate head counts of 87 and

4    79); see also *J & J Sports Productions, Inc. v. George*, 2008 WL 4224616 (E.D.Cal. 2008)

5    (Maximum statutory damages awarded where establishment had thirty person capacity and

6    no more than 20 people watching event at any given time; event was broadcast on one 27"

7    television, and there was no cover charge).

8          Other district courts in the United States have awarded the statutory maximum

9    under section 605 without regard to the underlying facts, but simply because of the unlawful

10   interception and the need for significant deterrence. For example, in *Kingvision*

11   *Pay-Per-View, Ltd. v. Dosani,* 2006 WL 3316988 (S.D.Tex. 2006), the court held:

12   > Several factors present in this case favor granting the maximum statutory damages
13   > of $10,000.00, as requested. The record establishes that defendant broadcast the
     > event and failed to appear in this suit. The record establishes the use of an unlawful
14   > device, making the violations willful. These factors, the difficulty in detecting unlawful
     > interception, the widespread problem of piracy, the projected loss to plaintiff, and the
15   > need for an award sufficient to deter future piracy by defendant and others, weigh in
     > favor of granting maximum statutory damages. Plaintiff has shown the basis for an
     > award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II).
16

17   *Id.* at 2.  In *Kingvision v. Dosani*, the "establishment contained seating for approximately

18   200 people, approximately 34 people were present, and each paid a cover charge of

19   $3.00." *Id.* These factors, however, were not relevant to the Court's award of statutory

20   damages but, rather, as discussed below, the award of enhanced damages.

21          The same factors that led the court in *Dosani* to award $10,000.00 in statutory

22   damages are present here. See also *J & J Sports Productions, Inc. v. Lopez*, 2008 WL

23   2915109, *4 (E.D.Cal. 2008) ("The Court also recognizes that deterrence of future

24   violations is a significant objective of § 553 and 605. Accordingly, the Court will recommend

25   that Plaintiff's application be granted and that damages in the sum of $30,000.00 be

26   awarded to Plaintiff."); *J & J Sports Productions, Inc. v. Rubio*, 2008 WL 4360883, *2

27   (S.D.Tex. 2008) ("Several factors . . . the difficulty in detecting unlawful interception, the

28   widespread problem of piracy, the projected loss to Plaintiff, and the need for an award

     sufficient to deter future piracy by Defendant and others, weigh in favor of granting

1   maximum statutory damages. The Plaintiff has shown the basis for an award of $10,000.00

2   in damages under section 605(e)(3)(C)(i)(II)"); *Kingvision Pay-Per-View Ltd. v. Gadson*,

3   2007 WL 2746780, *2-3 (M.D.N.C. 2007) (Awarding $10,000.00 in statutory damages and

4   $10,000.00 in enhanced damages against a commercial establishment with a seating

5   capacity of 40, 27 patrons viewing the event on 1 large screen television, and a five dollar

6   cover charge.).

7       The above cases establish that even where the violations do not appear particularly

8   egregious, maximum statutory damages may be awarded.

9       **2.    "Enhanced" damages under 47 U.S.C. § 605(e)(3)(C)(ii).**

10      Plaintiff also requests enhanced damages pursuant to section 605(e)(3)(C)(ii), which

11  permits this Court, in its discretion, to award up to $100,000.00 in additional damages

12  where "the violation was committed willfully and for the purposes of direct or indirect

13  commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).

14      The conclusion that the actions of defendants in cases such as these are "willful"

15  has been clearly established. *Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219

16  F.Supp.2d 769, 776 (S.D. Tex. 2002) ("Based on the limited methods of intercepting

17  closed-circuit broadcasting of pay-per-view events and the low probability that a

18  commercial establishment could intercept such a broadcast merely by chance," courts have

19  held the unauthorized display of such an event willful); see also *Garden City Boxing Club,*

20  *Inc. v. Paquita's Cafe, Inc.*, 2007 WL 2783190 at *5 (S.D.N.Y. 2007); *J & J Sports*

21  *Productions, Inc. v. Garcia,* 2009 WL 2567891, *4 (S.D.Tex. 2009) ("The Defendant must

22  have engaged in a deliberate act since signals do not descramble spontaneously, nor do

23  television sets connect themselves to cable distribution systems...") quoting *Time-Warner*

24  *Cable of N.Y. v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999); *Joe*

25  *Hand Promotions, Inc. v. Martinez*, 2008 WL 4619855, *6 (S.D.N.Y. 2008) ("The acquisition

26  of an encrypted signal by defendant undoubtedly required some affirmative actions that

27  imply both a degree of technical sophistication and a desire to obtain a benefit to which

28  defendant was not entitled.").

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    In addition, the conclusion that such an interception is accomplished for commercial

2    advantage is also firmly established. "A defendant who intercepts signals and broadcasts

3    programming without authorization 'in a place of business where certain events are shown

4    to the public. is generally held to have acted willfully and for purposes of commercial

5    advantage.'" *Garden City Boxing Club, Inc. v. Batista*, 2007 WL 4276836, *5 (E.D.N.Y.

6    2007); citing *Am. Cablevision of Queens v. McGinn*, 817 F.Supp. 317, 320 (E.D.N.Y. 1993)

7    (further citation omitted); see also *Joe Hand Promotions, Inc. v. Garcia*, 546 F.Supp.2d

8    383, 386 (W.D.Tex. 2008) ("Because of the extreme unlikelihood that Defendant could

9    inadvertently have acquired the signal to display the fight, coupled with its failure to file an

10   answer denying Plaintiff's allegations on this issue, the Court finds that Defendant [acted]

11   willfully and for purposes of direct or indirect commercial advantage.") (statutory citation

12   omitted).

13   Finally, "the court may draw an inference of willfulness from a defendant's failure to

14   appear and defend an action in which the plaintiff demands increased statutory damages

15   based on allegations of willful conduct." *Garden City Boxing Club, Inc. v. Frezza*, 476

16   F.Supp.2d 135, 138 (D. Conn. 2007); quoting *J & J Sports Productions, Inc. v. Drake*, 2006

17   WL 2927163, *5 (E.D.N.Y. 2006).

18   With respect to the proper amount of enhanced damages, the case of *Joe Hand*

19   *Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009) is instructive. In *Haddock*,

20   the district court awarded a total of $50,000.00 in damages to Plaintiff. *Id.* at *2. The court

21   awarded $25,000.00 under both sections 553 and 605; while not specifically broken down,

22   at a minimum, the enhanced damages must have been $15,000.00. See 47 U.S.C. §

23   605(e)(3)(c)(i)(II) (setting maximum statutory award at $10,000). In *Haddock*, the court

24   found that because the program was broadcast on five televisions and because the

25   establishment was located in a "relatively urban city" with a population in excess of

26   100,000, the impact was more than minimal. *Id.*

27   Here, the Program was displayed on only one television when investigator Gravelyn

28   was present. In this case, the population of Hayward, California, where the Defendant's

establishment is located, is in excess of 140,606 people. See http://quickfacts.census.gov/

United States District Court

For the Northern District of California

1  (United States Census determination that the 2006 population of Hayward, California was

2  140,606). By comparison, the population of Visalia, California, the city at issue in Haddock,

3  was 113,487 at the time the Program was unlawfully exhibited.   http://quickfacts.census.

4  gov/qfd /states/06/0682954.html. Both cities have populations of more than 100,000.

5       The case of *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179

6  (D.Colo. 2008), also provides a good analogy. In *Gutierrez* there were 24 patrons in the

7  establishment and the court awarded $5,000.00 in statutory damages under section

8  605(e)(3)(c)(i)(II). *Id.* at 1184. In determining the appropriate enhanced damages award,

9  the district court noted that the actions of defendants were willful, the problems of piracy

10  were pervasive, and that the award needed to serve as a deterrent. *Id.* at 1185. The court,

11  however, also found certain factors did not support a substantial damages award. *Id.* The

12  court observed that,

13       "Plaintiff presents no evidence of prior violations; Plaintiff provides no evidence of
14  significant earnings by Defendants that night; Plaintiff's loss of revenue for one
   establishment is not significant; there is no evidence of advertising to entice a larger
   crowd; the restaurant did not have a cover charge; and there is no evidence that the
15  restaurant charged a premium for food and drinks that night." *Id.* After taking all of
   these factors that militate against enhanced damages into account, the court still
16  awarded an additional $15,000.00.

17  *Id.*

18       In *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135 (D. Conn. 2007), the

19  district court noted that the violations were not particularly egregious. The circumstances

20  were very similar to this case. There was only one illegal interception, only 33 people were

21  present in the establishment and only a minimal profit was made by the defendant. *Id.* at

22  139. In addition, it was not established that defendants had ample financial resources. *Id.*

23  Even under these circumstances, however, the court noted:

24       plaintiff has established knowing and willful violation, for commercial advantage
   and/or private financial gain, and explains the loss in revenue and detrimental effect
25  upon lawful residential and commercial cable customers as a result of signal piracy,
   which interest and concomitant need for deterrence other courts have recognized . .
26  . Accordingly, taking into account awards granted by other courts in this district
   under similar circumstances, the Court will award $5,000 in statutory damages, plus
27  an additional $10,000 for the willful nature of defendant.s violation, done for
   commercial advantage and/or private financial gain.

28

*Id.* at 139-40 (internal citation omitted).

United States District Court
For the Northern District of California

1    In *Kingvision Pay-Per-View, Ltd. v. Dosani, supra*, with respect to enhanced

2  damages under section 605(e)(3)(C)(ii) (called "punitive damages" by the court) the court

3  noted:

> The record shows that defendant showed the Event for the purpose of increasing the
> business, customers, and sales revenue. The record does not indicate the amount of
> profit, if any, defendant derived from unlawfully broadcasting the Event. The record
> does show that the defendant's establishment contained seating for approximately
> 200 people, approximately 34 people were present, and each paid a cover charge of
> $3.00. Based on the affidavit showing an intentional violation, this court finds that the
> record supports a finding of a willful violation an award of $25,000.00 additional
> damages beyond the $10,000.00.

9  *Id.* at *2 (emphasis added).

10    Dosani is also substantially similar to the case herein. While the Defendant in this

11 case did not charge a cover, the establishment in *Dosani* is equivalent and the number of

12 people present was comparable, it is clear that in both cases the event was shown for the

13 purpose of increasing business, customers, and sales revenue.

14    In *Innovative Sports Marketing, Inc. v. Medeles*, 2008 WL 1758886 (S.D.Tex. 2008),

15 with respect to enhanced damages under section 605(e)(3)(C)(ii) the court noted that,

16 "Because the defendant has not contested the allegations of willfulness, and default

17 judgment has been granted, the court considers the defendant's actions to be willful and for

18 the purpose of commercial advantage." *Id.* at *2. The court awarded an increase in

19 damages of $50,000.00, "because the defendant is considered to have admitted

20 willfulness, and to deter future violations of § 605(a)." *Id.*; citing *Al-Waha*, 219 F.Supp.2d at

21 716 for ("The deterrence of future violations ... is one of the objectives of the statute."); see

22 also *Garden City Boxing Club, Inc. v. Batista,* 2007 WL 4276836, *4 (E.D.N.Y. 2007) ("In

23 exercising [its] discretion [to award enhanced damages], courts should be mindful of the

24 difficulty in detecting such violations and the widespread problem of piracy . . . . The court

25 should therefore grant damages in an amount which achieves the deterrent purposes of the

26 statute.").

27    **3.    Nominal damages have proven insufficient to combat piracy.**

28    Those cases that award nominal damages are a major reason why there has been

little or no decrease in piracy. As noted in *J & J Sports Productions, Inc. v. Castrillon*, 2009

United States District Court

For the Northern District of California

1    WL 1033364, *3 (E.D.N.Y. 2009), "Absent substantial financial penalties, the defendant will
2    likely continue to illegally display the plaintiff's programming and other such establishments
3    will follow suit. The plaintiff cannot practicably investigate all these infractions, nor should
4    they be expected to do so." *Id.* (internal citation omitted). "In order to preserve the plaintiff's
5    livelihood, the Defendant must be held accountable for an amount significant enough to
6    deter such conduct. Absent such a deterrent, the defendant and other potential infringers
7    will be encouraged to violate the law, as infringement would be more cost effective than
8    contracting with the plaintiff." *Id.*

9

10    **III.    Plaintiff is entitled to damages for conversion**

11    With respect to Plaintiff's conversion claim, damages for conversion are based on
12    the value of the property at the time of the conversion (plus interest). Cal. Civ. Code §
13    3336; *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 215, 193 Cal.Rptr. 322. In
14    addition, the plaintiff in a conversion action is entitled to, "A fair compensation for the time
15    and money properly expended in pursuit of the property." Cal. Civ. Code § 3336. In this
16    case, Plaintiff seeks $4,200.00 in conversion damages, the amount Defendants would have
17    been required to pay had they ordered the Program from Plaintiff.

18    **IV.    Conclusion and recommendation**

19    Theft of closed-circuit broadcasts, such as the Program, by unauthorized
20    commercial establishments adversely impacts both Plaintiff and its lawful customers.
21    Plaintiff pays substantial fees to promoters to obtain the exhibition rights to sublicense the
22    broadcast of closed-circuit programming to authorized commercial establishments.

23    The unauthorized interception, receipt and broadcast of the Program and other
24    closed-circuit programming threaten the economic viability of the promotions industry.
25    There are no countervailing social or policy considerations that justify the unauthorized
26    interception of these broadcasts. *ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir.
27    1985); *Subscription Television of Greater Washington v. Kaufman*, 606 F. Supp. 1540,
28    1544 (D.D.C. 1985).

1   As a result of theft by the Defendants and others, Plaintiff has lost and will continue

2   to lose legitimate commercial customers that are unwilling and financially unable to

3   compete with unauthorized locations, like Manila Garden Restaurant, that exhibit sports

4   and other closed-circuit programming without licensing. Because these unauthorized

5   commercial establishments offer programming to their patrons for no fee (or for a fee which

6   is less than the authorized businesses charge), the legitimate commercial establishments

7   cannot attract paying customers to offset their investments in commercial licensing and

8   event promotion, and as a result, they incur substantial financial loss. Ultimately, this

9   eliminates the potential that they will continue to purchase commercial exhibition licenses

10  from the Plaintiff in the future.

11  Plaintiff's exclusive source of revenue is the sublicense fees it charges to authorize

12  commercial establishments for the right to broadcast events like the Program. The

13  corrosive effect of commercial signal theft permanently destroys Plaintiff's lawful customer

14  base. *Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983).

15  Further, as a direct and proximate result of piracy, Plaintiff has suffered damage to

16  its goodwill and professional reputation, and has lost its right and ability to control and

17  receive fees for transmission of the Program. *Quincy Cablesystems, Inc. v. Sully's Bar*, 640

18  F.Supp. 1159, 1161 (D.Mass. 1986). When negotiating sublicense fees, Plaintiff represents

19  to commercial establishments that it exercises supervision over the commercial distribution

20  of its programming. When an unauthorized commercial establishment intercepts, receives,

21  and broadcasts closed-circuit programming, such as the Program, Plaintiff's reputation and

22  goodwill suffers irreparable damage with its existing and prospective commercial customers

23  from what appears to be a misrepresentation of such capabilities on its own part.

24  In light of the foregoing, this Court recommends that the district court use its

25  statutory discretion to award Plaintiff adequate compensation, up to the maximum

26  permissible under statute, from the Defendants for the losses suffered herein. Accordingly,

27  this Court recommends that the district court enter the Proposed Order and Judgment e-

28  filed at Docket # 13, Ex. 6.

Respectfully submitted,

United States District Court
For the Northern District of California

DATED: May 16, 2011

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\10-5122\R&R re 13.wpd

United States District Court
For the Northern District of California