1
2
3                          UNITED STATES DISTRICT COURT
4                          NORTHERN DISTRICT OF CALIFORNIA
5
6
7   J & J SPORTS PRODUCTIONS, INC.,              No. C 10-5122 PJH
8              Plaintiff,
                                                 **ORDER GRANTING MOTION FOR**
9       v.                                       **DEFAULT JUDGMENT**
10  CARMINA BASTO, et al.,
11             Defendants.
                                        /
12
13

14      Before the court is the motion of plaintiff J & J Sports Productions, Inc. for default

15  judgment against defendants Carmina Basto, individually and doing business as Manila

16  Garden Restaurant, and J & C Basto Co., Inc., an unknown business entity doing business

17  as Manila Garden Restaurant.  Plaintiff alleges that defendants unlawfully intercepted and

18  broadcasted a boxing match, for which plaintiff owned the commercial exhibition rights, in

19  violation of 47 U.S.C. § § 605(a) and 553.  Plaintiff now moves for default judgment against

20  defendants.

21                                   **BACKGROUND**

22      Plaintiff J & J Sports Productions, Inc. contracted for the exclusive nationwide

23  commercial distribution rights to broadcast the "Firepower": Manny Pacquiao v. Miguel

24  Cotto Championship Fight Program telecast nationwide on Saturday, November 14, 2009

25  (the "Program").  Complaint ¶ 10.  The Program included the main event (between Manny

26  Pacquiao and Miguel Cotto), under-card (preliminary) bouts and fight commentary.  Id.

27      Plaintiff thereafter entered into sublicensing agreements with commercial entities

28  throughout the United States by which plaintiff granted limited public exhibition rights to

**United States District Court**
For the Northern District of California

1   these entities within their respective establishments (e.g., hotels, racetracks, casinos,

2   taverns, bars, restaurants, social clubs, etc.).  Id. ¶ 11.

3       Defendants Basto and J & C Basto Co., Inc. are each an owner, operator, and/or

4   individual with control over Manila Garden Restaurant, a commercial establishment doing

5   business in Hayward, California.  Id. ¶¶ 7-8.  Plaintiff alleges that defendants and/or their

6   agents or employees illegally intercepted and/or exhibited the Program for commercial

7   advantage and/or private financial gain.  Id. ¶¶ 13-14.  On November 14, 2009, an

8   investigator hired by plaintiff visited Manila Garden Restaurant and observed the unlawful

9   exhibition of the Program there on a 42-inch LCD television.  Doc. nos. 13-3 at 2

10  (Declaration of Affiant) and 13-5 ¶ 7 (Plaintiff's Affidavit) (representing that the part of the

11  program observed by the investigator was the under-card bout between Santos and

12  Foreman).  The investigator counted 79 and 87 people at defendants' establishment at two

13  different times and approximated the capacity at 150 people.  Doc. no. 13-3 at 2.  The

14  license fee to exhibit the Program in a commercial establishment of that size would have

15  been $4,200.00.  Doc. no. 13-5 ¶ 8.

16      On November 12, 2010, plaintiff filed this action against defendants Carmina Basto,

17  individually and d/b/a Manila Garden Restaurant; and J & C Basto Co., Inc., an unknown

18  business entity d/b/a Manila Garden Restaurant.  The complaint asserts four causes of

19  action: violation of the Federal Communications Act of 1934, 47 U.S.C. § 605; violation of

20  the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553;

21  common-law claim of conversion; and violation of California Business and Professions

22  Code section 17200.  The complaint seeks statutory and enhanced damages of $110,000

23  for violation of section 605 and $60,000 for violation of section 553, compensatory

24  damages for conversion, and attorneys' fees and costs.

25      Plaintiff served the complaint on defendants on January 5, 2011.  Doc. nos. 4 and 5.

26  Neither defendant filed an answer or any other responsive pleading to plaintiff's duly served

27  complaint.  Accordingly, on February 3, 2011, upon plaintiff's request, the clerk of the court

28  entered default against defendants in this action.  Doc. no. 7.  On March 1, 2011, plaintiff

2

**United States District Court**

For the Northern District of California

1    filed the instant motion for default judgment and served the notice of motion on defendants

2    by mail.  Doc. no. 13.  Neither defendant has filed an opposition to the motion for default

3    judgment.

4        Plaintiff's motion seeks the maximum statutory damages and enhanced damages for

5    willful violations of 47 U.S.C. § 605.  Doc. no. 13-1 at 11, 14-15.  <u>See</u> 47 U.S.C.

6    §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii).  Plaintiff also seeks damages for conversion in

7    the amount of $4,200, equivalent to the sublicense fee that defendants would have been

8    required to pay.  Doc. no. 13-1 at 20.

9        The court referred the motion for default judgment for a report and recommendation,

10   which was issued on May 16, 2011.  The court has reviewed the report and

11   recommendation and declines to adopt it.  The court rules on the motion for default

12   judgment de novo as follows.

13                                    **DISCUSSION**

14   **I.    Jurisdiction**

15       Before entering default judgment, a court must determine whether it has subject

16   matter jurisdiction over the action and personal jurisdiction over the defendant.  <u>In re Tuli</u>,

17   172 F.3d 707, 712 (9th Cir. 1999).

18           **A.    Subject Matter Jurisdiction**

19       The court has subject matter jurisdiction over this action because plaintiff's claims

20   arise under the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Cable

21   Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553.

22           **B.    Personal Jurisdiction**

23       Defendants Basto and J & C Basto Co., Inc. own and operate a business known as

24   Manila Garden Restaurant in Hayward, California.  Complaint ¶¶ 7-8.  The court has

25   personal jurisdiction over defendants.

26   **II.   Default Judgment**

27       Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter judgment

28   against a defendant against whom a default has been entered.  Generally, default

                                         3

United States District Court

For the Northern District of California

1   judgments are disfavored because "[c]ases should be decided upon their merits whenever

2   reasonably possible." Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

3       "The general rule of law is that upon default the factual allegations of the complaint,

4   except those relating to the amount of damages, will be taken as true." Geddes v. United

5   Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S.

6   1, 12 (1944)).  In exercising its discretion to grant default judgment, the court may consider

7   the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's

8   substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

9   action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

10  due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

11  Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471-72.  Upon entry of

12  default, the factual allegations of the complaint are taken as true, except for those relating

13  to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

14      **A.    Merits and Sufficiency of Complaint**

15      In its motion for default judgment, plaintiff seeks judgment only on its claims for

16  violation of 47 U.S.C. § 605(a) and conversion.  The Federal Communications Act prohibits

17  the unauthorized interception of radio and satellite (rather than cable) transmissions.  47

18  U.S.C. § 605(a).  Section 553(a) prohibits the unauthorized interception of cable signals.

19  47 U.S.C. § 553(a)(1).  See J & J Sports Productions, Inc. v. Manzano, 2008 WL 4542962

20  *2 (N.D. Cal. September 29, 2008) ("A signal pirate violates section 553 if he intercepts a

21  cable signal, he violates section 605 if he intercepts a satellite broadcast.").  To state a

22  claim for conversion, the allegations must show "ownership or right to possession of

23  property, wrongful disposition of the property right and damages." G.S. Rasmussen &

24  Associates, Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (9th Cir.1992).

25      With respect to the alleged section 605 violation, plaintiff was not able to ascertain

26  the precise means that defendants used to intercept the Program.  Doc. no. 13-1 at 8.  The

27  inspector noted that neither a cable box nor a satellite dish was visible.  Doc. no. 13-3 at 2.

28  As another judge of this court has noted, if plaintiff wanted to prove that defendants

4

United States District Court

For the Northern District of California

1   intercepted radio or satellite signals in violation of section 605(a), plaintiff "could have filed

2   a third party subpoena or requested an order for inspection." J & J Sports Productions, Inc.

3   v. Ro, 2010 WL 668065 *3 (N.D. Cal. Feb. 19, 2010).  Because neither a cable box nor

4   satellite dish was visible at defendants' establishment, the court follows the reasoning of

5   other judges in this district who have entered judgment and awarded damages under

6   section 553 rather than section 605 based on the understanding that cable boxes are more

7   easily hidden than satellite dishes and more likely to be the source of transmission.  J & J

8   Sports Productions, Inc. v. Juanillo, 2010 WL 5059539 *2 (N.D. Cal. Dec. 6, 2010); J & J

9   Sports Productions, Inc. v. Guzman, 2010 WL 4055934 *2 (N.D. Cal. Oct. 14, 2010).

10  Although plaintiff seeks liability pursuant to section 605 in its motion for default judgment,

11  the court determines that the allegations of the complaint are sufficient to establish

12  defendants' liability under section 553(a)(1).

13       To satisfy the second and third Eitel factors, plaintiff's substantive claims for violation

14  of section 553 and for conversion appear to have merit and the allegations of the complaint

15  are well-pleaded and sufficient to state those claims.  The complaint alleges that plaintiff

16  had purchased exclusive distribution rights to the Program and that defendants intercepted

17  transmission of the Program without authorization.  The allegations against defendants are

18  deemed admitted by virtue of defendants' default and the court is not required to make

19  detailed findings of fact.  See Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir.

20  2002).

21       **B.    Remaining Eitel Factors**

22       The remaining Eitel factors, on balance, weigh in favor of granting default judgment.

23  First, if the motion for default judgment were denied, plaintiff would likely be without a

24  remedy.  See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

25  2002).  Second, because defendants did not file an answer or otherwise respond to the

26  complaint, there is little to suggest that there is a possibility of a dispute concerning material

27  facts.  The factual issues whether defendants broadcast the Program without authorization

28  or sublicense from plaintiff are straightforward and easily ascertainable.  Third, there is no

United States District Court

For the Northern District of California

1  evidence in the record that would tend to show that defendants' default was due to

2  excusable neglect.  Fourth, although policy favors judgment on the merits, should a

3  defendant fail to answer or appear, a decision on the merits is "impractical, if not

4  impossible."  Elektra Entertainment Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal.

5  2005).  This factor, though it weighs against a default judgment, does not preclude such a

6  judgment.

7      Finally, a large sum of money at stake would disfavor default judgment.  Eitel, 782

8  F.2d at 1472.  As discussed below, however, the court declines to award the full amount of

9  damages requested by plaintiff, $114,200.00, and determines an amount of damages that

10 is not completely disproportionate or unreasonable.  This factor therefore does not weigh

11 against default judgment.

12     Given defendants' failure to appear and the significant risk of prejudice to plaintiff by

13 unauthorized interception of closed-circuit broadcasts, the sufficiency of plaintiff's

14 complaint, the apparent merit of plaintiff's substantive claims, and the lack of disputed

15 issues of fact, the court determines that default judgment against Carmina Basto and J & C

16 Basto Co., Inc. is appropriate.

17     **C.    Damages**

18     Plaintiff seeks the maximum statutory damages under section 605, which provides

19 that a court may award statutory damages of "not less than $1,000 or more than $10,000"

20 for a violation of section 605(a) and may award enhanced damages of up to $100,000 if the

21 "violation was committed willfully and for purposes of direct or indirect commercial

22 advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).  As

23 discussed above, the court determines that the complaint supports liability under section

24 553, which provides for statutory damages of "not less than $250 or more than $10,000" for

25 a violation of section 553(a) and enhanced damages up to $50,000 for a willful violation.

26 47 U.S.C. § 553(c)(3)(A)(ii), (B).

27     The court takes judicial notice of other cases identified by plaintiff in which these

28 same defendants were held liable for similar violations of commercial signal piracy.  In J & J

United States District Court

For the Northern District of California

1 | Sports Prod. v. Basto, et al., C09-1023 MMC, the parties settled the action which the court

2 | dismissed on January 29, 2010.  In J & J Sports Prod. v. Basto, et al., C10-1803 SI, the

3 | court entered default judgment against defendants in the amount of $5,800.00 on February

4 | 14, 2011.  In J & J Sports Prod. v. Basto, et al., C10-5455 CRB, the court entered default

5 | against defendants and plaintiff has filed a motion for default judgment.  Plaintiff has

6 | demonstrated that defendants are not first-time offenders but have illegally intercepted

7 | several different transmissions.  Because the interception challenged in this action occurred

8 | before dismissal or judgment was entered in the other lawsuits, plaintiff has not

9 | demonstrated that the adverse outcome of its other enforcement actions have failed to

10 | deter defendants from further illegal activity so as to warrant the maximum award of

11 | damages.

12 | Plaintiff's inspector's affidavit demonstrates that defendants did not require a cover

13 | charge on the evening of the illegal interception and the number of patrons averaged 83.

14 | Doc. no. 13-3 at 2.  The court determines that statutory damages in the amount of $5,000

15 | for violation of section 553(a) are appropriate here to serve as a deterrent from future

16 | piracy.  The court further determines that plaintiff has demonstrated repeated and willful

17 | conduct by defendants for purposes of commercial advantage to support enhanced

18 | damages of $2,000.  See doc. no. 13-5 ¶¶ 9, 13.

19 | Plaintiff also seeks $4,200 in compensatory damages for conversion.  Pursuant to

20 | Cal. Civ. Code § 3336, defendants are liable for the value of the property at the time of the

21 | conversion.  Plaintiff has shown that the commercial sublicense fee for defendants to

22 | broadcast the Program legally would have been $4,200.  Doc. no. 13-5 ¶ 8 and Ex. 1.

23 | Accordingly, the court awards damages for conversion in the amount of $4,200.

24 | \\

25 | \\

26 | \\

27 |

28 |

**CONCLUSION**

For the foregoing reasons, the court GRANTS plaintiff's motion for default judgment against Carmina Basto and J & C Basto Co., Inc.  The court awards $11,200 in damages to plaintiff.

**IT IS SO ORDERED.**

Dated: June 6, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

8